**In re Florence D. BATTISTA, f/k/a Florence D. Morneau, Debtor.**

**Bankruptcy No. 94–12180–MWV.**

United States Bankruptcy Court, D. New Hampshire.

March 23, 1995.

Mark P. Cornell, Raymond J. DiLucci, P.Z., Concord, NH, for debtor.

Cheryl Sessions Bownes, Shapiro & Kreisman, Manchester, NH, for Centerbank Mortg. Co.

Jay M. Niederman, Manchester, NH, for Federal Home Loan Mortg. Corp.

Lawrence P. Sumski, Chapter 13 trustee, Amherst, NH.

### MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

This matter came before the Court on March 17, 1995, for a hearing on confirmation of the debtor's Chapter 13 plan. At the conclusion of the hearing, the Court took confirmation of the debtor's plan under advisement to consider the issues it raised, including whether a Chapter 13 plan may provide for different treatment of cosigned consumer debt claims without regard to whether the different treatment unfairly discriminates. Based upon the record before the Court and for the reasons set out below, the Court denies confirmation of the debtor's Chapter 13 plan. In the process, the Court concludes that section 1322(b)(1) of the Bankruptcy Code does not authorize different treatment of cosigned consumer debt claims without regard to the unfair discrimination test.

### FACTS

The debtor's Chapter 13 plan, filed on September 26, 1994, divides creditors into seven classes, with "unsecured claims that have a co-debtor" placed in Class E and "[u]nsecured, [n]onpriority claims that do not have a co-debtor" placed in Class F. Class E creditors will be paid in full under the plan. Class F creditors will receive a dividend of approximately six percent.[1] The total amount available for distribution to creditors in Classes E and F is $7,050, which is $130 per month over the sixty month life of

---

1. This dividend will be less if Marine Midland Mortgage Corporation seeks a deficiency after it forecloses the mortgage it holds against a condominium unit owned by the debtor.

the plan, less $750 for the priority claim of the debtor's counsel.

Household Retail Services, Inc./Household Bank (Illinois), N.A. ("Household Bank") and Household Finance Corporation ("Household Finance") are the two creditors placed by the debtor in Class E. Household Bank filed a proof of claim for $464.94. Household Finance's proof of claim is in the amount of $5,152.86. With the exception of one secured claim, no other codebtor claims are scheduled by the debtor. The non-codebtor unsecured creditors filed claims totalling $23,817.

The liquidation analysis set forth in the debtor's plan states that no more than $5,000 would be available to unsecured creditors in the event of liquidation, the source of which would be the debtor's two IRA accounts. Schedule B of the debtor's schedules list the value of these accounts at $7,828.

### DISCUSSION

■ Section 1325(a) of the Bankruptcy Code sets forth six requirements for confirmation of Chapter 13 plans, two of which are relevant here. First, section 1325(a)(1) requires a plan to comply "with the provisions of this chapter and with the other applicable provisions of this title" and, therefore, incorporates the classification provisions found in section 1322(a)(3) and 1322(b)(1) of the Code. Second, a plan cannot be confirmed under section 1325(a)(4) of the Code if the holders of allowed unsecured claims receive less than they would receive upon liquidation in a chapter 7 case. The debtor's plan does not satisfy either of these requirements.

Section 1322(a)(3) of the Bankruptcy Code allows a debtor to classify claims, but not without limits. Under section 1322(b)(1) of the Code, a plan may "designate a class or classes of unsecured claims ... but may not discriminate unfairly against any class so designated, however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims." The debtor urges the Court to find that this "however" clause allows her

to pay her unsecured codebtor consumer debts in full while providing her other unsecured creditors only a six percent dividend, either because it is justified under the circumstances or because the "however" clause is not subject to the unfair discrimination test.

■ The Court recognizes that authority is split on whether the "however" clause is a carve-out from the unfair discrimination test. *Compare Spokane Railway Credit Union v. Gonzales (In re Gonzales)*, 172 B.R. 320 (E.D.Wash.1994) (plan may separately classify unsecured codebtor consumer claims, but may not unfairly discriminate against other unsecured creditors in the process) *with In re Dornon*, 103 B.R. 61 (Bankr.N.D.N.Y. 1989) (section 1322 was amended in 1984 to allow for separate classification and disparate treatment of cosigned consumer debt "without regard to unfair discrimination"). The Court, however, believes the better view is that the unfair discrimination standard applies to plans that separately classify cosigned consumer debts. Had Congress intended otherwise it could plainly have said so. Instead, Congress said codebtor consumer debt claims may be treated "differently," a term that "has content separate from the proscription against unfair discrimination." *Nelson v. Easley (In re Easley)*, 72 B.R. 948, 956 (Bankr.M.D.Tenn.1987) (resolving awkward language of statute by holding that "all different treatments are not necessarily fair discrimination").

■ Here, the classification proposed by the debtor will result in receipt of a six percent distribution to the holders of the non-codebtor unsecured claims in Class F. In a chapter 7 liquidation, those creditors would receive a distribution of approximately 17%. This result is not only unfairly discriminatory, *In re Gonzalez*, 73 B.R. 259, 260 (Bankr.D.P.R.1987), but also an independent basis for denying confirmation under section 1325(a)(4).

■ For the foregoing reasons, the debtor's plan cannot be confirmed without amendment, which the Court will grant the debtor leave to accomplish. If the debtor wishes to again separately classify Household Bank and Household Finance, then she will need to establish that the proposed discriminatory treatment is fair. *In re Cheak,* 171 B.R. 55, 58 (Bankr.S.D.Ill.1994). In addition, she will need to establish that the Household Bank and Household Finance claims fall within the section 1322(b)(1) exception [2] and were incurred for her benefit as opposed to the benefit of the cosigner.[3] This latter limitation is consistent with the treatment afforded codebtors elsewhere in the Code, *see* 11 U.S.C. § 1301(c)(1), and the reasons articulated for the addition of the "however" clause to section 1322(b)(1) in 1984. *Gonzales,* 172 B.R. at 329.

A separate order will issue in accordance with this opinion.

**2.** Although the debtor's schedules and plan state that there is a codebtor for Household Bank's claim, the proof of claim filed by Household Bank indicates otherwise. The proof of claim also indicates that Household Bank is partially secured. Household Finance's proof of claim, on the other hand, does not contain any supporting documentation from which it can be determined whether any other individual is liable for its claim. Except for the debtor's schedules, which disclose these debts as credit card purchases, the record is silent on whether these claims are in fact "consumer debts." The record is equally silent on whether these debts were acquired for the benefit of the debtor, not the cosigner.

**3.** *See Gonzales,* 172 B.R. at 329 ("section 1322(b)(1) is limited to co-signed debt acquired for the benefit of the debtor, not the co-signer"). The debtor offered no evidence on these issues at the confirmation hearing. Accordingly, the Court makes no findings on the same.