UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-50597

_____


In The Matter Of: SALOMON RAMIREZ; MARIA A. RAMIREZ,

Debtors


SALOMON RAMIREZ; MARIA A. RAMIREZ,

Appellants,

versus

PHYLLIS BRACHER, Chapter 13 TRUSTEE,

Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

February 18, 2000

Before BARKSDALE, BENAVIDES and STEWART, Circuit Judges.

PER CURIAM:

This appeal is from a bankruptcy court's order denying confirmation of a proposed Chapter 13 plan of reorganization. We affirm.

I.   FACTUAL AND PROCEDURAL HISTORY

The facts of this appeal are not in dispute.  The debtors,

Salomon and Maria A. Ramirez, filed a petition for relief under Chapter 13 of Title 11 of the United States Code. Pursuant to 11 U.S.C. section 1321, the debtors filed a proposed bankruptcy plan. After subtracting monthly expenses from their net income, the debtors were left with $185 in disposable income each month. The plan proposed that the debtors would pay the trustee $125 each month for a period of sixty months.

More specifically, the plan separated all unsecured debts into classes and proposed a different level of repayment for each class. "Class One" was comprised entirely of a debt in the amount of $844 to Mervyns Credit that had been co-signed by Maria Ramirez's sister. The plan proposed to pay the entire amount of this co-signed consumer debt plus twelve percent interest. After paying off the entire debt to Mervyns, the plan proposed that the trustee would begin to distribute payments to the debts in "Class Three," which consisted of general, unsecured debts. It was estimated that it would take thirty-three months before funds would be available for distribution to the class of general, unsecured claims.

The overall estimated payout under the proposed plan to the general, unsecured claims was twenty percent. However, if the money designated to pay the Mervyns debt was diverted instead to the class of general, unsecured claims, the percentage of repayment to the class of general, unsecured claims would rise from twenty percent to twenty-five percent. The trustee objected to the plan on the basis that the proposed payments to the class of co-signed

2

debt unfairly discriminated against the class of general, unsecured claims.

The bankruptcy judge held a hearing on the confirmation of the plan. At that hearing, the debtors failed to offer any evidence that the proposed discrimination favoring the co-signed debt over other classes of unsecured debt was in fact fair.[1] In a memorandum opinion, the bankruptcy judge, holding that the debtors had failed to meet their burden of showing that the separate classification of co-signed debt did not unfairly discriminate against other unsecured creditors, denied confirmation of the proposed plan. *In re Chacon,* 223 B.R. 917 (Bankr.W.D.Tx. 1998). On appeal, the district court affirmed. The debtors now appeal to this Court.

II. ANALYSIS

The debtors' sole argument on appeal is that the bankruptcy court erred in holding that 11 U.S.C. § 1322(b)(1)[2] requires a

---

[1] As the district court stated, such a showing might take the form of evidence that failure to give the proposed preferential treatment to the co-signed debt would either cause financial hardship on the co-debtor/sister or detrimentally impact the debtors' ability to perform on the plan.

[2] The text of § 1322(b)(1), as amended by Congress in 1984 and applicable to this appeal, provides as follows:

> Subject to subsections (a) and (c) of this section, the plan may--
>
> designate a class or classes of unsecured claims, . . . but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual

3

debtor to demonstrate that a proposed payment plan that prefers co-signed, unsecured debt does not unfairly discriminate against other unsecured debt. In a recently published opinion, we rejected this contention and applied the unfair discrimination test to co-signed consumer debt. *In re Chacon,* __ F.3d __, 1999 WL 1416496 (September 24, 1999). We explained that "[d]ifferences in treatment are not discriminatory if they rationally further a legitimate interest of the debtor and do not disproportionately benefit the cosigner, *e.g.* by reimbursing interest where none is due or reimbursing more than the actual amount of the co-signed debt." *In re Chacon,* 1999 WL 1416496, at *1.

Like the instant case, that case involved a bankruptcy plan that proposed to pay a co-signed debt in full, with twelve percent interest, prior to any distributions to the general unsecured class of debt. There, we stated that no justification appeared for such a high and preferential interest rate. We therefore affirmed the judgment of the bankruptcy court denying confirmation of the plan.

Because the relevant facts in that case are identical to the case at bar, *In re Chacon* is controlling. Accordingly, applying the holding of *In re Chacon* to the case at bar, we AFFIRM the judgment of the bankruptcy court denying confirmation of the bankruptcy plan.

---

is liable on such consumer debt with the debtor differently than other unsecured claims[.]

4

BENAVIDES, Circuit Judge, specially concurring:

I join the per curiam opinion because it is apparent that it is controlled by our disposition in *In re Chacon,* __ F.3d __, 1999 WL 1416496 (5th Cir. Sept. 24, 1999), a published summary calendar opinion.[3]  I write only to express my concern with the reasoning set forth therein.

As articulated in the instant per curiam opinion, the debtors' sole argument on appeal is that the bankruptcy court erred in holding that 11 U.S.C. § 1322(b)(1) requires a debtor to demonstrate that a proposed payment plan that prefers co-signed, unsecured debt does not unfairly discriminate against other unsecured debt.  The instant question, therefore, is one of statutory construction.

The original version of § 1322(b)(1) provided, in pertinent part, that a bankruptcy plan may "designate a class or classes of unsecured claims, . . . but may not discriminate unfairly against any class so designated."  In 1984, Congress amended the statute by adding the following phrase: "however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims."  Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (1984) (BAFJA).

---

[3]  As in the instant case, in *In re Chacon,* 1999 WL 1416496, there was no appellee's brief filed.  Therefore, we had no assistance from the trustee in either case.

In *In re Chacon,* after recognizing the split among bankruptcy courts regarding whether the amended clause should be interpreted to exempt co-signed consumer debt from the unfair discrimination test, this Court opined, in part, as follows:

> The argument for applying the unfair discrimination test even to a cosigned consumer debt is that the word "differently" must be given a meaning different from unfair discrimination, and reading the however clause as an exception would not do so. *See, e.g., [In re Easley*, 72 B.R. 948, 956 (Bankr.M.D.Tenn. 1987)]. This rationale is wholly unconvincing. In its desire not to give any two distinct words or phrases the same meaning, it reads out the however clause. If a cosigned debt could be prioritized only if it does not discriminate, then the however clause serves no purpose whatsoever.

*In re Chacon,* 1999 WL 1416496, at *1 (quotation marks added).

I fully agree with the analysis of *In re Chacon* up to this point. It is at this juncture, however, I part ways with our prior reasoning. As explained in more detail below, only one result follows once one accepts the premise that the "however clause" serves no purpose if the statute is interpreted to allow co-signed debt to be prioritized only if it does not discriminate: co-signed debt is not subject to the unfair discrimination test.

In other words, treatment that is "unfair discrimination" and being treated "differently" cannot constitute the same type of treatment. Because all unfairly discriminatory treatments, by any definition, are different, the set of treatments that comprise unfair discrimination is subsumed within the larger set of

7

different treatments.  Therefore, the set of different treatments consists of both fair and unfair discrimination.  Different treatments, which the statute expressly authorizes for co-signed debts, sometimes result in unfair discrimination.

Contrary to my preceding analysis, the previous panel next opined as follows:

> Moreover, the however clause can be read without creating any unnecessary use of synonyms simply by interpreting it to clarify that such treatment of cosigned consumer debt is usually not unfairly discriminatory. Differences in treatment are not discriminatory if they rationally further a legitimate interest of the debtor and do not disproportionately benefit the cosigner, *e.g.,* by reimbursing interest where none is due or reimbursing more than the actual amount of the cosigned debt.

*In re Chacon,* 1999 WL 1416496, at *1.

The first excerpt from the previous panel's opinion recognizes that retaining the unfair discrimination test for co-signed debt would leave the "however clause" bereft of meaning in violation of established principles of statutory construction.  Notwithstanding that realization, the second excerpt from the previous panel's opinion apparently resurrects the unfair discrimination test. Although I am not necessarily questioning the proposition in *In re Chacon* that "such treatment of cosigned consumer debt is usually not unfairly discriminatory," I do not see how that proposition

8

supports the resuscitation of the unfair discrimination test.[4] That said, I now attempt to glean Congress's intent in amending § 1322(b)(1).

As set forth previously, the debtors contend that the added clause carves out an exception allowing co-signed debts to be treated differently from other unsecured debts, regardless of whether it results in unfair discrimination against another class of unsecured debts. The plain language of section 1322(b)(1), the debtors argue, expressly allows this special treatment of co-signed debts. I disagree with the debtors' argument to the extent that they are asserting that the language of this provision is clear. Although the bankruptcy courts have split on the question of "whether the `however' clause is a carve-out from the unfair

---

[4] The Bankruptcy Code does not define "unfair discrimination." Bankruptcy courts generally use the following four-part test to determine whether the plan unfairly discriminates:

> (1) whether the discrimination has a reasonable basis;
> (2) whether the debtor can carry out a plan without the discrimination;
> (3) whether the discrimination is proposed in good faith; and
> (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*In re Leser,* 939 F.2d 669, 671-72 (8th Cir. 1991); *accord In re Thompson,* 191 B.R. 967, 971 (Bankr.S.D.Ga. 1996).

discrimination test,"[5] courts generally agree that the amended statute is awkwardly worded. *In re Easley*, 72 B.R. 948, 956 (Bankr.M.D.Tenn. 1987)*; accord In re Applegarth,* 221 B.R. 914, 915 (Bankr.M.D.Fla. 1998)*; In re Strausser,* 206 B.R. 58, 60 (Bankr.W.D.N.Y. 1997)*; In re Martin,* 189 B.R. 619, 627 (Bankr.E.D.Va. 1995)*; In re Gonzales*, 172 B.R. 320, 328 (E.D.Wash. 1994)*; In re Cheak,* 171 B.R. 55, 57 (Bankr.S.D.Ill. 1994);[6] *but see In re Dornon,* 103 B.R. 61, 64 (Bankr.N.D.N.Y. 1989) (opining that the "plain statutory language of the amendment . . . constitutes a `carve out' to the `unfair discrimination' standard"). Because the language of the provision is somewhat awkward and, thus, susceptible to varying interpretations, I apply the appropriate canons of statutory interpretation and look to its legislative history to determine Congress's intent.

The debtors contend that Congress's choice of the word "however" to begin the clause that was added to section 1322(b)(1) evidences its intent to "carve out" an exception to the unfair discrimination test for co-signed debt. The debtors' position is the one chosen by a minority of bankruptcy courts. *See In re Riggel,* 142 B.R. at 204*, In re Dornon,* 103 B.R. at 64-65. The

---

[5]  *In re Battista,* 180 B.R. 355, 357 (Bankr.D.N.H. 1995).

[6]  *See also In re Battista*, 180 B.R. at 357 (citing *In re Easley*)*; In re Whitelock,* 122 B.R. 582, 591 n. 19 (Bankr.D.Utah 1990) (quoting *In re Easley).*

court below and a majority of bankruptcy courts have interpreted the "however clause" as serving to specifically allow debtors to designate a class of co-signed debt, separate from other classes of unsecured debt, with no consequence to the requirement that discrimination among the separate classes must be fair. *See e.g., In re McKown,* 227 B.R. 487, 491-92 (Bankr.N.D.Ohio 1998); *In re Applegarth,* 221 B.R. 914, 915-16 (Bankr.M.D.Fla. 1998); *In re Battista,* 180 B.R. at 357; *In re Easley*, 72 B.R. at 956.[7]

In matters of statutory construction, we begin by looking to the literal meaning of the words chosen by Congress. *Flora v. United States,* 357 U.S. 63, 65, 78 S.Ct. 1079, 1081 (1958). "However" is defined as "in spite of that; on the other hand; BUT." *Webster's Third International Dictionary* 1097 (1981) (capitalization indicates synonymous cross-reference). It is well established "that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 1015 (1992). Accordingly, if Congress's only intention in amending the provision was to expressly allow co-signed debt to constitute a separate class, it seems inappropriate to have begun the clause with the word "however." To give the word "however" operative effect, we must interpret it as indicating that the second clause is somehow

---

[7] Our research indicates that no other Circuit has decided this issue.

11

in contrast to the first clause.

Further, there was no need for Congress to separately address the manner in which co-signed debts are treated ("differently") if it intended such debts to receive the same treatment as other unsecured debts, *i.e.,* subject to the unfair discrimination test.[8] It appears to me that this Court's reading of the statute (co-signed debts are subject to the unfair discrimination test) interprets the word "differently" to mean the same as the phrase "unfair discrimination." Such an interpretation violates a "well settled rule of statutory construction that where different language is used in the same connection in different parts of a statute it is presumed that the Legislature intended a different meaning and effect." *Quarles v. St. Clair,* 711 F.2d 691, 701 n.31 (5th Cir. 1983) (internal quotations marks and citations omitted).

Several courts have relied on the following analysis to hold that co-signed debts are not exempt from the discrimination test:[9]

> The 1984 amendment is awkwardly worded. To give meaning to all words in the amended section, it must be true that a debtor's power to treat co-signed consumer debts "differently" has content separate from the

---

[8] If co-signed debts were subject to the unfair discrimination test, the amended version simply could have provided in relevant part that a bankruptcy plan may "designate a class or classes of unsecured claims, including co-signed unsecured debt, . . . but may not discriminate unfairly against any class so designated."

[9] *In re Strausser,* 206 B.R. at 60; *In re Battista,* 180 B.R. at 357; *In re Whitelock,* 122 B.R. at 591 n. 19.

12

> proscription against unfair discrimination. The awkward language is resolved by holding that all different treatments are not necessarily fair discrimination.

*In re Easley,* 72 B.R. at 956.  I, like certain bankruptcy courts, find the above-quoted analysis quite persuasive; however, it leads me to draw the opposite conclusion.  If all different treatments are not necessarily fair discrimination, then implicit in that statement (or the corollary to it) is that different treatments sometime result in unfair discrimination.[10]

Additionally, prior to the 1984 amendment, several courts prohibited  debtors from classifying co-signed consumer debt as a separate class under section 1322(b)(1).  *See e.g., In re Montano,* 4 B.R. 535 (Bankr.D.D.C. 1980); *In re Utter,* 3 B.R. 369 (Bankr.W.D.N.Y. 1980).[11]  In response to these decisions, Congress amended the statute by expressly allowing plans to treat such claims "differently than other unsecured claims."  § 1322(b)(1).

The following excerpt from a Senate Report illustrates at

---

[10]  It has been opined that if Congress wanted to delete the unfair discrimination test in regard to co-signed consumer debt, it could have plainly stated that it was doing so.  *In re Strausser,* 206 B.R. at 59; *In re Battista,* 180 B.R. at 357.  I find that statement offers little assistance in interpreting the statute. While it is of course true that Congress could have drafted the amendment such that it was perfectly clear, as previously set forth, the language of the provision is awkward. We must interpret the provision as drafted.

[11]  This Court, however, construed the earlier version of section 1322(b)(1) to allow co-signed debts to be classified separately from other unsecured debts. *Public Finance Corporation v. Freeman,* 712 F.2d 219, 222 (5th Cir. 1983).

least some of the impetus behind Congress's amendment of section 1322(b)(1) to allow co-signed, unsecured debt to be classified separately from other unsecured debt:

> A number of cases have considered whether claims involving co-debtors may be classified separately from other claims. Thus far, the majority of cases have refused to permit such classification on the ground that codebtor claims are not different than other claims. [citations omitted].
>
> Although there may be no theoretical differences between codebtor claims and others, there are important practical differences. Often, the codebtor will be a relative or friend, and the debtor feels compelled to pay the claim. If the debtor is going to pay the debt anyway, it is important that this fact be considered in determining the feasibility of the plan. Sometimes, the codebtor will have posted collateral, and the debtor will feel obligated to make the payment to avoid repossession of the collateral. In still other cases, the codebtor cannot make the payment, and the effect of nonpayment will be to trigger a chapter 7 or chapter 13 petition by the codebtor, which may have a ripple effect on other parties as well. For these reasons, separate classification is often practically necessary.

S.Rep. No. 65, 98th Cong., 1st Sess., 17-18 (1983)[S.445].[12]

---

[12] The Senate and House reports for BAFJA do not contain any reference to section 1322(b)(1). *In re McKown,* 227 B.R. at 491. However, there was an earlier bill containing language that was partially incorporated into BAFJA. *Id.* Therefore, the only relevant legislative history is found in the above-quoted Senate report for the earlier bill, the Omnibus Bankruptcy Improvements Act of 1983, S.445, 98th Cong., 1st Sess. (1983) (OBIA). *Id.* Although these statements were not made contemporaneously with the enactment of BAFJA and, thus, are entitled to less weight, it would be remiss not to consider them. *See Resolution Trust Corp. v. Miramon,* 22 F.3d 1357, 1363 (5th Cir. 1994); *see also Paula Aiello*

Congress recognized that, as a practical matter, many debtors will attempt to pay a co-signed debt regardless of whether the plan that is confirmed allows for such a preferred distribution. After acknowledging that many debtors are "going to pay the [co-signed] debt anyway," it would be a meaningless exercise to continue to impose a burden of demonstrating that the classification did not unfairly discriminate. By expressly accepting this reality, it appears that Congress effectively relieved debtors of the burden of proving that such classifications did not result in unfair discrimination against other unsecured creditors. Congress expressed no intent to better police the debtors' behavior but instead indicated an intent to allow for explicit acknowledgment of such practical considerations within the context of the plan. Indeed, Congress made clear that the overriding priority was to determine that the proposed plan was feasible so it could be successfully completed.

I am mindful that some courts have expressed a concern that exempting co-signed debt from the unfair discrimination test would be an invitation to abuse. *See e.g., In re Martin,* 189 B.R. 619, 628 (Bankr.E.D.Va. 1995). Nevertheless, I believe that the good

---

*& Eric K. Behrens, Student Loans, Chapter 13 of the Bankruptcy Code, and the 1984 Amendments,* 13 J.C. & U.L. 1 (1986) (explaining that the authors rely on the relevant legislative history of the OBIA to interpret the BAFJA).

faith requirement mandated under section 1325(a)(3)[13] remains a safeguard against abuse. *See In the Matter of Chaffin,* 816 F.2d 1070, 1073 (5th Cir. 1987) (explaining that good faith is viewed in light of the "totality of the circumstances" test under which we consider factors such as the reasonableness of the proposed repayment plan and whether the plan indicates an attempt to abuse the spirit of the Bankruptcy Code), *modified on other grounds,* 836 F.2d 215 (5th Cir. 1988).[14]

As previously stated, I recognize that the language of section 1322(b)(1) is not clear, hence the split in authority among the bankruptcy courts. I also acknowledge my natural inclination to follow the majority of bankruptcy courts that have held the unfair discrimination test is applicable to co-signed debt. It is not,

---

[13] Section 1325(a)(3) provides in pertinent part that "the court shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law."

[14] One bankruptcy court has found the controversy regarding whether co-signed, unsecured debts were subject to the unfair discrimination test to be "largely a matter of semantics." *In re Thompson,* 191 B.R. 967, 971 (Bankr.S.D.Ga. 1996). The *Thompson* court expounded that:

> "Unfair discrimination" as defined does not have any application independent of existing confirmation requirements. Courts which hold that unfair discrimination applies to codebtor classifications often find unfair discrimination by reference to a failure to satisfy the other confirmation requirements of section 1325."

*Id.* (other citations omitted).

however, our task to determine what we believe Congress should have enacted. I am persuaded that my interpretation of this provision is the best implementation of Congress's intent.

In sum, I concur in the judgment of the per curiam opinion because it is controlled by our prior precedent. Nonetheless, I write to set forth my concerns regarding the analysis contained in that prior precedent. But for the existence of our prior opinion in *In re Chacon*, 1999 WL 1416496, I would vacate the judgment of the bankruptcy court and remand for further consideration of the debtors' plan.