ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   EC-11-1502-MkPaD |
| | ) | |
| AMANDA KAY RENTERIA, | ) | Bk. No.   11-10636 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL HUGH MEYER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| AMANDA KAY RENTERIA, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on March 22, 2012
at Sacramento, California

Filed - May 4, 2012

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable W. Richard Lee, Bankruptcy Judge, Presiding

Appearances: Appellant Michael Hugh Meyer argued on his own behalf; Geoffrey Michael Adalian of the Adalian Law Office argued on behalf of Appellee Amanda Kay Renteria.

Before: MARKELL, PAPPAS and DUNN, Bankruptcy Judges.

MARKELL, Bankruptcy Judge:

## INTRODUCTION

Michael H. Meyer, chapter 13[1] trustee ("Trustee"), appeals the bankruptcy court's order confirming the plan of debtor Amanda K. Renteria ("Renteria"). The Trustee objected to the plan because the plan separately classified and proposed to pay in full, with 10% interest, one unsecured claim. That claim was a consumer debt guaranteed by Renteria's mother.

Renteria was less generous with her other debts; her plan proposed to pay little or nothing on account of any other unsecured claims. The court overruled the Trustee's objection, and confirmed the plan in an opinion appearing at In re Renteria, 456 B.R. 444 (Bankr. E.D. Cal. 2011). We AFFIRM.

## FACTS

The facts are not disputed. Renteria commenced her chapter 13 bankruptcy case on January 20, 2011. According to her bankruptcy schedules, she owed in aggregate roughly $100,000 in unsecured claims, which included approximately $20,000 she owed to her former attorney James Preston ("Preston"). In her proposed chapter 13 plan, she classified Preston's unsecured claim separately from all of her other unsecured claims. Renteria's plan used this separate classification to pay Preston's claim in full, with 10% interest. Other unsecured creditors, however, were to get nothing; the plan proposed to pay a 0% dividend.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

In supporting her plan, Renteria explained that she preferred Preston over all other unsecured creditors because her mother, Nellie Reser ("Reser"), was a codebtor on the debt owed to Preston. The plan stated:

> The claim of James Preston is for services provided to Debtor. Her mother is jointly liable for this debt. Mr. Preston filed suit against Debtor and her mother in the Superior Court of California, Tulare County. According to the case management statement filed December 23, 2010 by plaintiff, default was entered against Debtor's mother.

Chapter 13 Plan (Jan. 20, 2011) at p. 7.

The Trustee objected to Renteria's plan. The Trustee argued that the preferential treatment of Preston's claim was impermissible and constituted unfair discrimination. The Trustee's argument tracked the unfair discrimination test this panel first adopted in Amfac Distrib. Corp. v. Wolff (In re Wolff), 22 B.R. 510, 512 (9th Cir. BAP 1982).[2] According to the Trustee, any personal obligation that Renteria felt she owed to protect Reser from Preston's collection activities was an insufficient basis for the proposed separate classification and resulting discrimination. The Trustee further asserted that Renteria was financially capable of carrying out a plan without

---

[2] The Wolff test is:

(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination. Restating the last element, does the basis for the discrimination demand that this degree of differential treatment be imposed?

Id.

3

preferring Preston and that the degree of discrimination in favor of Preston exceeded the asserted basis for the discrimination, because Preston would be paid in full, with interest, whereas all other unsecured creditors would receive nothing. On the other hand, the Trustee conceded that Renteria's preferential treatment of Preston (and indeed her entire plan) was proposed in good faith consistent with § 1325(a)(3).[3]

In response to the Trustee's objection, Renteria argued that her preferential treatment of Preston's claim was not subject to the good faith portion of Wolff's test. According to Renteria, Wolff was decided in 1982, before the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (1984) (BAFJA), amended the Bankruptcy Code to exempt the preferential treatment of codebtor consumer claims from the unfair discrimination test. In the alternative, Renteria argued that, even if codebtor consumer claims were not wholly exempt from the unfair discrimination test, her proposed plan satisfied that test.

Renteria filed a declaration in support of her response elaborating on the nature of the debt she owed to Preston and Reser's status as a guarantor of that debt. Renteria explained that she retained Preston to prosecute family law litigation on her behalf for domestic violence and paternity. According to Renteria, she enlisted the help of her mother, Reser, who guaranteed in writing Renteria's payment of attorneys' fees and

---

[3] As stated in the Trustee's Opening Brief to this panel, "The Trustee objected to confirmation of Debtor's proposed Chapter 13 plan on one ground; Debtor's plan did not comply with 11 U.S.C. § 1322(b)(1)."

4

expenses in order to induce Preston to represent Renteria. As Renteria put it, she would not have been able to prosecute her family law litigation in a competent manner without her mother's help in retaining Preston.

Renteria further represented that she could not afford to both pay off Preston in full, with interest, and pay more to her other unsecured creditors.[4] She also pointed out that she had no non-exempt assets, so her other unsecured creditors were no worse off under her chapter 13 plan than they would have been if she had filed a chapter 7 bankruptcy case.

In its opinion on confirmation, In re Renteria, 456 B.R. 444 (Bankr. E.D. Cal. 2011), the bankruptcy court overruled the Trustee's objection and confirmed Renteria's plan. The bankruptcy court held that a plan provision calling for the separate classification and preferential treatment of a codebtor consumer claim is not subject to § 1322(b)(1)'s prohibition against unfair discrimination. According to the bankruptcy court, the plain language of that section, as amended by BAFJA, unambiguously exempted codebtor consumer claims from the unfair discrimination rule. Id. at 448-49.

The bankruptcy court thereafter entered an order confirming

---

[4] Renteria's declaration also indicated that she had agreed at her § 341(a) meeting of creditors to increase her plan payments by an additional $7,196.06 over the three-year life of her plan. At oral argument, we were informed that the source of this increase was Renteria's scheduled pay off of an installment loan during the plan; the funds that had been committed to the loan would now be committed to the plan. These increased plan payments ultimately might cause the general unsecured creditors to receive a small dividend from this case, but nothing in the record enables this panel to quantify that dividend.

5

Renteria's plan, and the Trustee timely appealed.[5]

## DISCUSSION

This appeal requires us to interpret § 1322(b)(1) of the Bankruptcy Code. Review of a bankruptcy court's interpretation of the Bankruptcy Code is de novo. Consol. Freightways Corp. of Del. v. Aetna, Inc. (In re Consol. Freightways Corp. of Del.), 564 F.3d 1161, 1164 (9th Cir. 2009).

Section 1322 addresses the permissible and required contents of a chapter 13 plan. In pertinent part, § 1322(b)(1) permits a debtor's plan to designate more than one class of unsecured claims, provided that the separate classification (and differing treatment) of claims meets certain criteria:

> (b) Subject to subsections (a) and (c) of this section, the plan may--
>
> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims . . . .

Prior to 1984, § 1322(b)(1) ended with the words "so designated." But BAFJA, enacted in 1984, amended § 1322(b)(1) to add the clause beginning with "however," which frequently is referred to as the "however clause." Pub. L. 98-353, § 316, 98 Stat. 333; see, e.g., Meyer v. Hill (In re Hill), 268 B.R. 548, 550 (9th Cir. BAP 2001) (referring to this clause as the "however clause").

---

[5] The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L), and we have jurisdiction under 28 U.S.C. § 158.

6

The "however clause" has been the subject of a significant amount of debate. Neither courts nor commentators have agreed on precisely what Congress intended to accomplish by adding the "however clause" to § 1322(b)(1). As this panel explained in Hill, the "however clause"

> has perplexed and divided courts as to whether it obviates, or merely qualifies, the fairness requirement. Most courts hold that separately classified co-obligor debts must still clear the § 1322(b)(1) unfair discrimination hurdle. The consequence is that the "however" clause permitting co-obligor debts to be treated "differently" is more in the nature of a qualification to the application of the unfair discrimination analysis than an exemption from it. A minority of courts . . . conclude that the "however" clause excuses compliance with the § 1322(b)(1) ban on unfair discrimination.

Id. at 551 (citations and paragraph structure omitted).

The minority courts, like the bankruptcy court here, have held that the "however clause" is plain and unambiguous; that is, it clearly carves out codebtor consumer claims from the requirements of the unfair discrimination rule. See, e.g., In re Hill, 255 B.R. 579, 580 (Bankr. N.D. Cal. 2000), rev'd on other grounds, In re Hill, 268 B.R. at 550; In re Dornon, 103 B.R. 61, 64 (Bankr. N.D.N.Y. 1989). These cases emphasize the placement of the "however clause" immediately following the unfair discrimination rule. In essence, these cases apply the "rule of the last antecedent." According to that rule, "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent." See 2A Norman J. Singer, SUTHERLAND ON STATUTORY CONSTRUCTION § 47.33 (7th ed. 2011).

But the rule of the last antecedent is flexible and not universally binding. See id. As the Supreme Court recently

7

explained, "this rule is not absolute and can assuredly be overcome by other indicia of meaning . . . ." Barnhart v. Thomas, 540 U.S. 20, 26 (2003).

More importantly, the plain meaning adherents tend to ignore or discount the distinctive language used in the unfair discrimination rule and in the "however clause." Specifically, the former refers to "unfair discrimination" whereas the latter refers to "different treatment." This difference in language arguably suggests that Congress intended something other than to completely exempt codebtor consumer claims from the unfair discrimination rule. A majority of courts examining the meaning of the "however clause" have emphasized this language difference, See, e.g., In re Battista, 180 B.R. 355, 357 (Bankr. D.N.H. 1995); Nelson v. Easley (In re Easley), 72 B.R. 948, 955-56 (Bankr. M.D. Tenn. 1987). In doing so, these majority courts, like Battista and Easley, have either explicitly or implicitly invoked a different rule of statutory construction: "when [Congress] uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." 2A SUTHERLAND ON STATUTORY CONSTRUCTION, supra, § 46.6.

But this rule of construction is no more absolute than the last antecedent rule. See Sosa v. Alvarez-Machain, 542 U.S. 692, 712 n.9 (2004) (referring to rule giving different words used in a statute different meanings as the "usual rule"); see generally Chickasaw Nation v. United States, 534 U.S. 84, 94 (2001) (stating that canons of construction are non-binding aids to statutory interpretation).

8

Courts emphasizing the language difference between the unfair discrimination rule and the "however clause" tend to conclude that the "however clause" was not meant to wholly exempt codebtor consumer claims from the unfair discrimination rule. See Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, www.ch13online.com, § 150.1, at ¶ [3] & n.3 (Rev. Apr. 14, 2009)(collecting cases).(collecting cases). Many of these cases further point out that, if Congress intended to wholly exempt codebtor consumer claims from the unfair discrimination requirement, they easily could have done so by using more straightforward language. See, e.g., In re Applegarth, 221 B.R. 914, 916 (Bankr. M.D. Fla. 1998); In re Battista, 180 B.R. at 357; see also CHAPTER 13 BANKRUPTCY, supra, 150.1, at ¶ [26] ("The Code could have said that all separate classifications of co-signed claims are permitted if Congress intended that the existence of a cosigner justified all different treatments. Because the statute does not say that, it is fair to infer that some justification is required.").

Some of these courts have taken this argument too far, to the point of rendering the "however clause" meaningless, by giving the clause no effect whatsoever. See, e.g., In re Strausser, 206 B.R. 58, 59-60 (Bankr. W.D.N.Y. 1997); In re Easley, 72 B.R. at 955-56. These cases, however, are inconsistent with one of the most basic and venerable canons of statutory construction: "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant. . . ." Corley v. United States, 556 U.S. 303, 314 (2009) (citations and

9

internal quotation marks omitted); see also 2A SUTHERLAND ON STATUTORY CONSTRUCTION, supra, § 46.6 ("It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute."). The violation of this canon is particularly odd here, because Congress separately added the "however clause" to § 1322(b)(1) by amendment; we must presume that Congress would not have added language to the statute unless it intended the language to serve some purpose.

Other courts have taken a middle ground, essentially concluding that the "however clause" was meant to limit the unfair discrimination rule's application to codebtor consumer claims. See, e.g., Ramirez v. Bracher (In re Ramirez), 204 F.3d 595, 596 (5th Cir. 2000) (per curiam); Chacon v. Bracher (In re Chacon), 202 F.3d 725, 726 (5th Cir. 1999); Spokane Ry. Credit Union v. Gonzales (In re Gonzales), 172 B.R. 320, 328–30 (E.D. Wash. 1994). But these "middle-ground" courts generally have struggled to apply the unfair discrimination rule in a limited or qualified manner. As one leading treatise put it, once these courts have determined that codebtor consumer claims are not wholly exempt from the unfair discrimination rule, they almost always conclude that the proposed preferential treatment of the codebtor consumer claim unfairly discriminates against the debtor's other unsecured creditors. CHAPTER 13 BANKRUPTCY, supra, § 150.1, at ¶ [5]. In other words, even though the middle-ground courts give lip service to the notion that the "however clause" somehow limits or restricts the unfair discrimination rule's application to codebtor consumer claims, in practice the result is virtually always the same as if Congress never had added the

10

"however clause" to the statute.[6]

At least one thing is clear to us from the above-referenced differing interpretations and battling canons of construction: courts have been unable to derive from the text of the statute a plain and unambiguous meaning for the "however clause."[7] Accordingly, we turn to the legislative history to facilitate our analysis.

By all accounts, the legislative history accompanying the BAFJA amendments had nothing to say about § 1322(b)(1), the

---

[6] One case, In re Thompson, 191 B.R. 967, 971-72 (Bankr. S.D. Ga. 1996), attempts to fashion a new test designed to apply the unfair discrimination rule in a limited manner. In light of Congress's addition of the "however clause" to § 1322(b)(1), Thompson did not apply this panel's Wolff test for ascertaining unfair discrimination when considering the preferential treatment of a codebtor consumer claim and instead adopted its own test consisting of three questions: (1) whether the claim truly is a codebtor consumer claim (see also In re Hill, 268 B.R. at 554 (holding that "however clause" did not apply to a claim when the third party liable on that claim was not really the debtor's codebtor)); (2) whether the codebtor undertook the underlying liability for the debtor's benefit or vice-versa (see also In re Gonzales, 172 B.R. at 329-30 (holding that preferential treatment of co-signed claim was unfair when debtor co-signed debt for the benefit of the codebtor)); and (3) whether the plan satisfies the other requirements for plan confirmation, particularly the good faith requirement under § 1325(a)(3). In re Thompson, 191 B.R. at 971-72. We express no opinion as to whether we agree with Thompson's application of its own test, but we note that its test may be of some future benefit to other courts struggling to apply the unfair discrimination rule in a limited or qualified manner.

[7] Indeed, two of the leading bankruptcy treatises, CHAPTER 13 BANKRUPTCY and COLLIER ON BANKRUPTCY, appear to favor differing interpretations of the "however clause." Compare CHAPTER 13 BANKRUPTCY, supra, § 150.1 (appearing to favor interpretation that unfair discrimination rule still applies to codebtor consumer claims), with 8 COLLIER ON BANKRUPTCY ¶ 1322.05[1] (Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2011) (appearing to favor interpretation that "however clause" exempts codebtor consumer claims from the unfair discrimination rule).

"however clause" or codebtor consumer claims. See, e.g., In re Ramirez, 204 F.3d at 600 & n.10 (Benavides, J., concurring); In re McKown, 227 B.R. 487, 491 (Bankr. N.D. Ohio 1998); In re Dornon, 103 B.R. at 64. Nonetheless, these cases and many others have turned to committee reports accompanying the Bankruptcy Improvements Act of 1981 ("BIA") and the Omnibus Bankruptcy Improvements Act of 1983 ("OBIA") – predecessor bills leading up to the passage of the BAFJA amendments. These predecessor bills contained proposed amendments to § 1322(b)(1) that were sufficiently similar to the BAFJA amendments to shed light on Congress's motivation for adding the "however clause" to the statute.[8] Indeed, many of the cases we have cited above, as well as COLLIER ON BANKRUPTCY, cite to and rely upon the Senate Report accompanying the OBIA in interpreting the "however clause." See COLLIER ON BANKRUPTCY, supra, at ¶ 1322.05[1].

In short, while the courts have not always agreed on what this legislative history demonstrates, most of them agree that the legislative history is relevant to the task of interpreting the "however clause." Because of its importance to our analysis,

---

[8] The OBIA proposed that § 1322(b)(1) should be amended to read as follows:

> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims which are specified in section 523(a) or involve a codebtor differently than other unsecured claims . . . ."

S. 445, 98th Cong. § 219 (1983) (emphasis added). The corresponding proposed amendment in the BIA was virtually identical. See S. 2000, 97th Cong. § 17 (1981); 127 Cong. Rec. 32,197 (1981).

12

we quote in full the relevant language from the Senate Report accompanying the OBIA:

A number of cases have considered whether claims involving codebtors may be classified separately from other claims. Thus far, the majority of cases have refused to permit such classification on the ground that codebtor claims are not different than other claims. See, for example, In re Utter, 3 B.R. 369 (Bk. W.D.N.Y. 1980); In re Montano, 4 B.R. 535 (Bk. D.D.C. 1980).

Although there may be no theoretical differences between codebtor claims and others, there are important practical differences. Often, the codebtor will be a relative or friend, and the debtor feels compelled to pay the claim. If the debtor is going to pay the debt anyway, it is important that this fact be considered in determining the feasibility of the plan. Sometimes, the codebtor will have posted collateral, and the debtor will feel obligated to make the payment to avoid repossession of the collateral. In still other cases, the codebtor cannot make the payment, and the effect of nonpayment will be to trigger a chapter 7 or chapter 13 petition by the codebtor, which may have a ripple effect on other parties as well. For these reasons, separate classification is often practically necessary.

Courts under both the present Act and the former law have emphasized that plans must be realistic. For example, courts have refused to confirm plans which the debtor could not possibly perform; have insisted on realistic estimates of expenditures; and have considered debts which the debtor proposes to pay outside the plan in determining feasibility. In re Washington, 6 BCD 1094 (Bk. E.D. Va. 1980). This approach is eminently sensible. No purpose is served by confirming a plan which the debtor cannot perform. If, as a practical matter, the debtor is going to pay the codebtor claim, he should be permitted to separately classify it in a chapter 13. A result which emphasizes purity in classifying claims does so at the price of a realistic plan. Neither debtors nor creditors benefit from such a rigid approach, and the Committee has determined that statutory authority to separately schedule such debts will contribute to the success of plans contemplating repayment of same. Accordingly, this authority is provided for in the proposed bill by amendment to section 1322(b)(1).

S. Rep. No. 98-65 (1983).[9]

Those courts holding that the unfair discrimination rule still applies to codebtor consumer claims point out that the above-quoted text focuses on separate classification and does not even mention unfair discrimination. See, e.g., In re Strausser, 206 B.R. at 59. But these courts ignore the fact that there is no point in separately classifying one or more unsecured debts unless the debtor also proposes to treat the separate classes differently.

None of the courts interpreting the "however clause" have, as yet, examined the two bankruptcy cases, Utter and Montano, which the committee report cited as exemplifying the case law Congress intended to address by amending the statute. In Utter, the joint debtors filed a chapter 13 plan separately classifying one unsecured claim, and proposing to pay that claim a 100% dividend, whereas all other unsecured creditors would receive little or nothing. In re Utter, 3 B.R. at 369. There was only one distinction between the preferred claim and the other unsecured claims: the sister of one of the joint debtors also was liable on that debt. Id. Utter denied confirmation of the debtors' plan for two reasons. First of all, according to the court, § 1122(a) (which § 1322(b)(1) incorporates by reference) did not permit the separate classification of substantially similar claims, and there was no legal distinction from the estate's perspective between the preferred claim and the other

---

[9] The committee report accompanying the BIA, S. Rep. No. 97-446, at 28 (1982), has virtually identical language explaining the purpose of its version of the "however clause."

14

unsecured claims.[10]  Id. at 369-70.  But the Utter court's second ground for denying confirmation is more important for our purposes; the Utter court held that the proposed preferential treatment of the codebtor claim "discriminates unfairly against the unsecured creditors who are classified in the class that does not contain co-signed debts."  Id.

Montano is quite similar to Utter.  In Montano, the debtor had unsecured debt in the aggregate amount of roughly $30,000.  In re Montano, 4 B.R. at 536.  Of that $30,000, roughly $7,000 was owed on "claims guaranteed by co-signors."  Id.  The debtor's chapter 13 plan proposed a 100% dividend on the codebtor claims, and a 1% dividend on all other unsecured claims.  Id.  In denying confirmation of the debtor's plan, the Montano court articulated virtually identical grounds for denial as those articulated in

---

[10]  Section 1122(a) provides: "Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  This panel (and a number of other courts) have rejected the notion that § 1122(a) prohibits a chapter 13 plan from separately classifying unsecured claims.  See In re Wolff, 22 B.R. at 512; see also Barnes v. Whelan, 689 F.2d 193, 201 (D.C. Cir. 1982) (collecting cases and stating "[s]ection 1122(a) specifies that only claims which are 'substantially similar' may be placed in the same class.  It does not require that similar claims must be grouped together, but merely that any group created must be homogenous.").  In the context of a chapter 11 case, this panel recently upheld a bankruptcy court's determination that, for purposes of § 1122(a), a separately-classified claim guaranteed by a third party was not substantially similar to other unsecured claims, by virtue of the third-party source of repayment.  Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC), 465 B.R. 525, 540 (9th Cir. BAP 2012).  While not directly apposite to the chapter 13 confirmation appeal currently before us, we note that Loop 76 is consistent with this panel's resolution of this appeal.

15

Utter. Id. at 537. In relevant part, Montano held that "such classification, where cosigned debts are to be paid in full and other general unsecured debts are to be paid much less, unfairly discriminates against the latter class, and thus is [impermissible] under § 1322(b)(1)." Id.

In light of the facts and holdings of Utter and Montano, and in light of Congress's citation of these two cases as exemplifying the case law it sought to address by amending § 1322(b)(1), we hold that Congress sought to permit a chapter 13 debtor to separately classify and to prefer a codebtor consumer claim when the facts are similar to those presented in Utter and Montano.

On that basis, we conclude that the Trustee's appeal here must fail. The record reflects that the Trustee only objected to Renteria's plan because she proposed to pay a 100% dividend to Preston and little or no money to her other unsecured creditors. There were no disputed facts, and Renteria's explanation for why she needed to prefer Preston – to prevent Preston from collecting from Reser as the guarantor of Renteria's debt – was uncontested. Renteria also represented that she had no additional net income to pay any greater dividend to her general unsecured creditors, and the Trustee did not challenge that representation. Furthermore, the Trustee waived or conceded all other confirmation issues.[11] Whatever else the "however clause" may or

---

[11] The Trustee thus framed the issue on appeal as an issue of law as simply "whether the bankruptcy court erred in finding that 11 U.S.C. Section 1322(b)(1) permits the separate classification of a consumer codebtor claim without proving that the differential treatment of the cosigned debt does not unfairly discriminate against the other general unsecured creditors."

16

may not do, a court may not deny confirmation of a plan under § 1322(b)(1) solely because the plan prefers a codebtor consumer claim over all other unsecured claims.

As a result, the bankruptcy court did not commit reversible error when it overruled the Trustee's plan objection and confirmed Renteria's chapter 13 plan.[12]

We acknowledge that our decision leaves open the issue of the precise relationship between the "however clause" and the unfair discrimination rule. We intentionally have left unanswered the question of when (if ever) does the preferential treatment of a codebtor consumer claim violate the unfair discrimination rule. We decline to answer that question until we receive an appeal with a record and issues squarely presenting that question for decision.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's order confirming Renteria's chapter 13 plan.

DUNN, Bankruptcy Judge, concurring:

I agree entirely with the disposition in the majority Opinion with respect to the issue presented in this appeal. I write separately to stake out some turf based on further interpretation of § 1322(b)(1) in light of information from the factual record on which the Trustee did not focus.

---

[12] While this panel's reasoning is significantly different than the bankruptcy court's, we may affirm on any ground fairly supported by the record. See Wirum v. Warren (In re Warren), 568 F.3d 1113, 1116 (9th Cir. 2009) (citing Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1223 (9th Cir. 1999)).

17

The Trustee insisted on a "zero-sum game" in this case. It did not have to be that way. Although the plan that originally was proposed projected a 0% dividend to the general unsecured creditors, at the § 341(a) meeting, Renteria stipulated to increase her plan payments by an additional $7,196.06 over the 36-month life of the plan in light of a loan payoff during the plan term. See note 4 in the majority Opinion, supra. There is no evidence in the record before us that the Trustee attempted to negotiate any further increase in the distribution to general unsecured creditors in Renteria's plan. The Trustee further admitted that Renteria's plan was filed in good faith. The stipulated increase in plan payments was not offset by any projected increases in expenses. Renteria's Schedules I and J reflected net disposable income of Renteria and her nonfiling spouse of $709.60 per month.[13] Accordingly, the stipulated increase in plan payments represented more than ten months of the disposable income of Renteria's household, as calculated at the outset of her chapter 13 case. That increase in plan payments was incorporated in the order confirming Renteria's plan. In a chapter 7 case, Renteria's general unsecured creditors would receive nothing.

Based on the language of § 1322(b)(1), its interpretation by

---

[13] To the extent that a nonfiling spouse regularly contributes to the family's actual household expenses, such contributions are included in the definition of "current monthly income." § 101(10A)(B). See also § 1325(b)(4); In re Vollen, 426 B.R. 359, 366 (Bankr. D. Kan. 2010) ("The Court concludes that the 'CMI of the debtor and the debtor's spouse combined' language in § 1325(b)(4), when applied in the case of a married debtor with a non-filing spouse, must refer to the debtor's CMI which, by definition, contains not only what her income may be, but also the contributions the non-debtor spouse makes to the household.").

18

federal courts at all levels, and the sparse legislative history, so ably analyzed in the majority Opinion, to me, the most plausible interpretation of the "however clause" is that Congress wanted to make crystal clear, in light of Utter and Montano, that a chapter 13 debtor has the right to classify separately unsecured claims with co-obligors from other unsecured claims without eliminating the prohibition on unfair discrimination. That interpretation, again to me, appears most consistent with the objective of the Bankruptcy Code to treat like obligations as consistently as possible, recognizing the "practical" and "realistic" considerations reflected in the Senate Report accompanying the OBIA. As expressed in the legislative history of the Bankruptcy Code, "Though the general policy of the bankruptcy laws is equality of distribution among all creditors, current law makes certain exceptions based on a showing of special circumstances or special need." H.R. Rep. 95-595, 95th Cong., 1st Sess. 186 (1977), reprinted in 1978 U.S.C.C.A.N. 5693.

Section 1322(b)(1) clearly allows unsecured claims with co-obligors to be treated "differently" than other unsecured claims. In my view, "differently" means that some separately classified claims can be treated "better" or "worse" than others. As noted in the CHAPTER 13 BANKRUPTCY treatise,

> The 1984 amendments to § 1322(b)(1) complement or work contrary to the codebtor stay in § 1301, depending on your perspective. Debtors are protected by the codebtor stay from indirect collection actions, to the extent the plan proposes to pay the cosigned claim; creditors with cosigners typically [but not always] get more favorable treatment through the plan because of § 1322(b)(1). The 1984 amendments reward the creditor that demanded a cosigner at the time of the original loan and somewhat balance the extraordinary injunction

19

in § 1301.

CHAPTER 13 BANKRUPTCY, supra, § 150.1[9]. The "however clause" recognizes that reality, while allowing for a fact-based determination in each case as to whether such different treatment crosses the "unfair discrimination" line.

> The 1984 amendment is awkwardly worded. To give meaning to all words in the amended section [1322(b)(1)], it must be true that a debtor's power to treat cosigned consumer debts "differently" has content separate from the proscription against unfair discrimination. The awkward language is resolved by holding that all different treatments are not necessarily fair discriminations.

Nelson v. Easley (In re Easley), 72 B.R. 948, 956 (Bankr. M.D. Tenn. 1987). See also CHAPTER 13 BANKRUPTCY, supra, § 150.1[26] ("The Code could have said that all separate classifications of co-signed claims are permitted if Congress intended that the existence of a cosigner justified all different treatments. Because the statute does not say that, it is fair to infer that some justification is required.").

In this case, Renteria separately classified Preston's claim, providing for payment in full with interest to Preston in order to protect her mother as co-obligor. As confirmed, Renteria's plan further provided for additional plan payments in excess of $7,000 that would allow for a significant distribution to the other unsecured creditors. Renteria's plan provided for different treatment of Preston's claim from other unsecured claims, as expressly allowed by § 1322(b)(1), but did not leave the general unsecured creditors with no potential for a meaningful distribution. The Trustee conceded that Renteria's plan was proposed in good faith. Based on the factual record

20

before us, that does not look like unfair discrimination to me.

PAPPAS, Bankruptcy Judge, Concurring:

In this appeal, the Panel wrestles with a common task: interpreting a provision of the Bankruptcy Code containing what some consider to be "awkward" language, § 1322(b)(1). The issue: whether, after the 1984 addition of the "however clause" to § 1322(b)(1), the "different" treatment proposed in a debtor's chapter 13 plan for a consumer debt on which another individual is liable must be "fair." What is unusual here, however, is that the challenge of achieving consensus about the meaning of this statute has proved to be too much for the Panel. While all members of the Panel agree about the result of this appeal, we propose three different approaches for disposing of the issue.

The majority Opinion prefers to affirm the bankruptcy court's decision based on the facts. While providing a comprehensive justification for a possible interpretation of § 1322(b)(1), this Opinion stops short of adopting its solution to the underlying statutory mystery for now, suggesting that the Panel must wait for better facts before taking a firm stand.

My concurring colleague would also affirm, but in contrast to the majority, does so by confidently concluding that, in adopting the however clause, "Congress wanted to make crystal clear . . . that a chapter 13 debtor has the right to classify separately unsecured claims with co-obligors from other unsecured claims without eliminating the prohibition [in the pre-1984 language of § 1322(b)(1)] on unfair discrimination." While this

21

opinion is certainly definitive, in my view, I respectfully disagree with the conclusion it reaches.

As for me, I also think we should announce a clear rule in our ruling today disposing of this issue. However, in my opinion, we should hold that since the addition of the however clause to § 1322(b)(1), different chapter 13 debtor plan treatments accorded consumer debts co-signed by another individual are no longer subject to the unfair discrimination rule. In arriving at my conclusion, I am tempted to join those bankruptcy courts, including the bankruptcy court in this case, that hold that in adding the however clause to § 1322(b)(1), Congress plainly created an unambiguous exception to the prohibition against unfair discrimination in plan claim treatment for a limited, defined class of creditors: those individual creditors that were liable with the debtor on consumer debt. See, e.g., In re Hill, 255 B.R. at 581 (Bankr. N.D.Cal. 2000) (describing 1984 amendment as "simple and unambiguous" and holding that the however clause "does not mean that in all cases a plan which separately classifies co-signed [consumer] debt must be confirmed, but only that the basis of denial of confirmation may not be unfairness to the other unsecured debt."); and In re Dornon, 103 B.R. at 64. If that is the case, then our task here is to apply the exception as written. United States v. Ron Pair Enters. Inc., 489 U.S. 235, 241 (1989) (instructing that when the language of the Bankruptcy Code is plain, the sole function of the courts is to enforce it according to its terms.).

However, I acknowledge that more than a few courts have, like my two colleagues, considered the amended language of

22

§ 1322(b)(1) to be ambiguous, requiring application of statutory construction techniques to unravel. But see Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) (cautioning that, in construing the Bankruptcy Code, that the statute's language may be awkward, does not make it ambiguous). While I agree a case can be made that the meaning of the statute is not clear, when I look outside its language, I nonetheless reach the same conclusion as the "plain language" courts do. In my view, given the context in which the 1984 amendment was enacted, Congress intended to exempt co-signed consumer debts from the unfair discrimination restrictions in § 1322(b)(1) applicable to other kinds of debt.

I will not attempt an extended justification for my construction of § 1322(b)(1). Instead, an excellent defense of this interpretation is found in the Judge Benevides' concurring opinion in Ramirez v. Bracher (In re Ramirez), 204 F.3d 595, 596-601 (5th Cir. 2000). In that opinion, the author notes that, to give appropriate effect to the however clause, it must refer to claim treatment that constitutes something other than unfair discrimination, as referenced in the prior clause of § 1322(b)(1). In other words, "there was no need for Congress to separately address the manner in which co-signed [consumer] debts are treated ('differently') if it intended such debts to receive the same treatment as other unsecured debts, i.e., subject to the unfair discrimination test." Id. at 599. Therefore, the judge explains, "[t]o give meaning to all words in the amended section, it must be true that a debtor's power to treat co-signed consumer debts 'differently' has content separate from the proscription against unfair discrimination. The awkward language is resolved

23

by holding that all different treatments are not necessarily fair discrimination." Id. (quoting Nelson v. Easley (In re Easley), 72 B.R. 948, 956 (Bankr. M.D. Tenn. 1987)). In reconciling the legislative history cited in the majority Opinion, above, with his view of the meaning of the Code, Judge Benevides opines:

> Congress recognized that, as a practical matter, many debtors will attempt to pay a co-signed debt regardless of whether the plan that is confirmed allows for such a preferred distribution. After acknowledging that many debtors are "going to pay the [co-signed] debt anyway," it would be a meaningless exercise to continue to impose a burden of demonstrating that the classification did not unfairly discriminate. By expressly accepting this reality, it appears that Congress effectively relieved debtors of the burden of proving that such classifications did not result in unfair discrimination against other unsecured creditors. Congress expressed no intent to better police the debtors' behavior but instead indicated an intent to allow for explicit acknowledgment of such practical considerations within the context of the plan. Indeed, Congress made clear that the overriding policy was to determine that the proposed plan was feasible so it could be successfully completed.
>
> I am mindful that some courts have expressed a concern that exempting co-signed debt from the unfair discrimination test would be an invitation to abuse. Nevertheless, I believe that the good faith requirement under section 1325(a)(3) remains a safeguard against abuse.

Id. at 600 (citations omitted).

I would hold that, because Congress authorized it, a chapter 13 plan may treat co-signed consumer claims differently, even though that treatment may, in some cases, be unfair when compared to that given the claims of other creditors.[14] This is so

---

[14] Like beauty, the "fairness" of plan treatment is in the eye of the creditor. In addition to conferring beneficial treatment, § 1322(b)(1) also plainly authorizes a debtor to separately classify and treat a co-signed consumer claim less
(continued...)

24

because, it was apparently the opinion of Congress that it is more likely that debtors will propose realistic, feasible chapter 13 plans if they can prefer claims on which, in many cases, a family member is also liable. While other creditors may think this approach is unfair, receipt of even a modest distribution on their claims (as will result in the case on appeal) will exceed what they would receive were the debtor to seek chapter 7 relief. Moreover, allowing different treatment of co-signed consumer debts may prevent the codebtor from also having to seek bankruptcy relief. And while different treatment of co-signed consumer debts is allowed, every chapter 13 debtor must prove the proposed plan has been filed in good faith under § 1325(a)(3), a Code provision that is adequate to the task of policing any debtor mischief.

I acknowledge that my interpretation of § 1322(b)(1) potentially sanctions the unfairness inherent in unequal treatment of creditors. But even if the solution to the problem it perceived is an overly broad one, any criticisms must be directed to Congress to remedy, not to the courts. Simply put, I would therefore affirm the decision of the bankruptcy court

---

[14] (...continued) favorably than other unsecured creditors. Such plan treatment may be necessary and appropriate, for example, when the codebtor received the consideration for the original debt (e.g., the debtor co-signed a relative's car loan), or where there may have been a change in the relationship of the debtor and codebtor since the debt was incurred (e.g., claim was co-signed by a former spouse who was later ordered to pay the debt in a divorce decree). Presumably, in such cases, the general body of unsecured creditors would consider the "different" treatment of the co-signed claim "fair," though the impacted creditor may disagree.

25

because the unfair discrimination restriction in § 1322(b)(1) does not apply to plan provisions treating co-signed consumer debts.